COURT OF APPEALS OF VIRGINIA


Present:    Judges Humphreys, McClanahan and Senior Judge Bumgardner
Argued at Richmond, Virginia


AHMAD PARKER

                                                    MEMORANDUM OPINION[*]  BY
v.        Record No. 1166-07-1                JUDGE ELIZABETH A. McCLANAHAN
                                                    MAY 6, 2008
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
Von L. Piersall, Jr., Judge Designate

Catherine E.P. Haas, Assistant Appellate Defender, for appellant.

Gregory W. Franklin, Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellee.


        Ahmad Parker was convicted of (1) distribution of or possession with intent to distribute

a controlled substance and (2) distribution of or possession with intent to distribute a controlled

substance on or near school property.  He argues the Commonwealth failed to prove that he was

involved in any drug transactions and the incident did not take place on public property or

property open to public use.  We affirm the trial court.

I.  BACKGROUND

        On appeal, we review the evidence in the "light most favorable" to the Commonwealth.

Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003) (citation omitted).

That principle requires us to "'discard the evidence of the accused in conflict with that of the

Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and

all fair inferences that may be drawn therefrom.'"  Kelly v. Commonwealth, 41 Va. App. 250,

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

254, 584 S.E.2d 444, 446 (2003) (*en banc*) (quoting <u>Watkins v. Commonwealth</u>, 26 Va. App. 335, 348, 494 S.E.2d 859, 866 (1998)).

While police were conducting a "spotting operation" in an area known as "Jeffry Wilson," a public housing development owned by the Portsmouth Redevelopment and Housing Authority, Ahmad Parker was observed walking near one of the apartment buildings. He removed a plastic bag from his pocket and untied the knot on the end of the bag. As a crowd of about ten or twelve people surrounded Parker, he handed out "suspected capsules of heroin" in exchange for money. When police approached Parker, he placed the money in his pocket and ran off. He threw down the bag corner that contained the remaining capsules. The police apprehended Parker and recovered the bag. They also recovered from Parker six hundred five dollars ($605) consisting of twenty-four (24) twenty-dollar bills, two (2) ten-dollar bills, and one (1) five-dollar bill. A laboratory analysis indicated that the capsules found in the bag contained heroin. An officer involved in the apprehension of Parker testified that the drug transactions took place on property that was open to public use. The evidence also established this location was within one thousand feet of a school. Parker was charged and convicted of distribution of or possession with intent to distribute a controlled substance in violation of Code § 18.2-248.[1] Additionally, Parker was charged and convicted of violating Code § 18.2-255.2[2] prohibiting

---

[1] Code § 18.2-248 provides in pertinent part that "it shall be unlawful for any person to manufacture, sell, give, distribute, or possess with intent to manufacture, sell, give or distribute a controlled substance."

[2] Code § 18.2-255.2 provides in pertinent part: "It shall be unlawful for any person to manufacture, sell or distribute or possess with intent to sell, give or distribute any controlled substance . . . while . . . upon the property, including buildings and grounds, of any public or private elementary, secondary, or post secondary school, or any public or private two-year or four-year institution of higher education, or any clearly marked licensed child day center" or "upon public property or any property open to public use within 1,000 feet of [such] property."

distribution of or possession with intent to distribute a controlled substance on or near school property.

## II. ANAYLSIS

On appeal, Parker argues: (1) the trial court erred in convicting him of distribution of or possession with intent to distribute a controlled substance because the evidence was insufficient to prove he was engaged in a drug transaction, and (2) the trial court erred in convicting him of distribution of or possession with intent to distribute a controlled substance on or near school property because the incident did not take place on public property or property open to public use.

### A. Sufficiency of Evidence

In reviewing the sufficiency of the evidence, "'the judgment of the trial court sitting without a jury is entitled to the same weight as a jury verdict.'" Saunders v. Commonwealth, 242 Va. 107, 113, 406 S.E.2d 39, 42 (1991) (quoting Evans v. Commonwealth, 215 Va. 609, 613, 212 S.E.2d 268, 271 (1975)). "The trial court's judgment will not be set aside unless plainly wrong or without evidence to support it." Hunley v. Commonwealth, 30 Va. App. 556, 559, 518 S.E.2d 347, 349 (1999). "The credibility of a witness and the inferences to be drawn from proven facts are matters solely for the fact finder's determination." Marable v. Commonwealth, 27 Va. App. 505, 509, 500 S.E.2d 233, 235 (1998) (internal citation omitted). "This Court does not substitute its judgment for that of the trier of fact." Hunley v. Commonwealth, 30 Va. App. 556, 559, 518 S.E.2d 347, 349 (1999) (citing Cable v. Commonwealth, 243 Va. 236, 239, 415 S.E.2d 218, 220 (1992)). The only relevant inquiry is "whether . . . *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original); see also Haskins v. Commonwealth, 44 Va. App. 1, 7, 602 S.E.2d 402, 405 (2004); Kelly, 41 Va. App. at 257, 584 S.E.2d at 447.

Parker contends the evidence only proved he was doing "something" with people around him, but failed to prove he engaged in a drug transaction. He argues that no suspected drug buyers were arrested and no drugs sold were recovered or tested. He further argues no narcotics were found on him and his money was "neatly bundled" and not stuffed in his pockets as would be "consistent with someone who had just received money from drug sales." Although Parker acknowledges the officer observing him never lost sight of the bag he dropped, he argues that because this was a high-drug area, the drugs could have been dropped by someone else.

We disagree. As the trial court found, the evidence was "clear" that Parker engaged in both the distribution of a controlled substance and possession with the intent to distribute a controlled substance. The drug transactions were directly observed by the police. An officer observed Parker take the suspected heroin capsules out of the bag and receive money in exchange for those capsules. The officer also observed Parker place the money in his pocket. Parker fled when alerted by persons that police were in the area. And it is well settled that "[f]light following the commission of a crime is evidence of guilt." Clagett v. Commonwealth, 252 Va. 79, 93, 472 S.E.2d 263, 271 (1996). An officer then observed Parker drop the bag. That officer never lost sight of the bag until retrieved by another officer. It was further established that no one else came into that area until the bag was recovered. A laboratory analysis proved the capsules in the bag contained heroin. Thus, the evidence was sufficient to prove Parker engaged in a drug transaction and sufficient to support his conviction of distribution of or possession with intent to distribute a controlled substance.

B. Property Open to Public Use

Parker also argues the drug transactions did not take place on public property or property open to public use as required by Code § 18.2-255.2.

It is undisputed that the property on which the drug transactions took place was private property owned by the Portsmouth Redevelopment and Housing Authority. As we recognized in

Smith v. Commonwealth, 26 Va. App. 620, 496 S.E.2d 117 (1998), though, the statute is not limited to public property. "If the General Assembly had intended to restrict application of the law to public property only, it would not have included the words 'or any property open to public use.'" Id. at 625, 496 S.E.2d at 119.

Parker contends this property was not open to public use because persons on the property could be cited for trespassing and because there was no evidence this was a place children would congregate. We believe the evidence supports the trial court's finding that the property was open to public use. An officer testified without objection that this property was open to public use. Although the officer agreed that persons warned could be cited for trespassing, that fact certainly does not negate the unequivocal testimony by the officer that this property was open to public use to persons who followed the Authority's rules.[3] As we recognized in Smith, "[t]he meaning of the phrase 'property open to public use' has never been interpreted by an appellate court, most likely due to the relatively clear import of its language," id., and we continue to adhere to that view. The evidence established that "people came from everywhere . . . flocking to [Parker]," there were several "ways to get in and out of Jeffry Wilson," and this was a "high drug area." The location of Parker's drug transactions took place in an area that was not "blocked, closed or in any way inaccessible to the public" and the "participants to the drug transaction[s] at issue had full access to the property." See Smith, 26 Va. App. at 626, 496 S.E.2d at 120. The trial court found that Parker

---

[3] We reject Parker's suggestion that the Commonwealth was required to prove this was an area where children were likely to congregate. As the Virginia Supreme Court noted in Commonwealth v. Burns, 240 Va. 171, 395 S.E.2d 456 (1990), schools are areas "where children congregate in large numbers" and the General Assembly has found that drug transactions occurring within 1,000 feet of a school "are the cause of harm to children." Id. at 176, 395 S.E.2d at 459. Thus, the statute is not limited to schools, places where children congregate, but applies as well to transactions occurring within 1,000 feet of such places. Although we noted in Smith that the convenience store outside of which defendant sold drugs and located across the street from a high school was a place where school age children congregate, we did not limit the application of the statute but rather discussed dangers the statute is designed to address.

was in an area "that would be open to the general public to come and go, not only to come and go through the streets, but also to come and go to visit people and do business with people who are there."  We find no error in the trial court's finding.

For the foregoing reasons, we affirm the judgment of the trial court.

<u>Affirmed.</u>